IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| DINAR CORP., INC. a Nevada corporation and HUSAM TAYEH, an individual, | : : : : | |
| Plaintiffs, | : : | |
| v. | : : | |
| STERLING CURRENCY GROUP, LLC, d/b/a DINAR BANKER; TYSON RHAME; FRANK BELL; JORDAN DOE; MATTHEW ADAMS; MARK DILEO; and JOHN DOE, | : : : : : : : | CIVIL ACTION NO. 1:14-CV-0714-AT |
| Defendants. | : | |

# **ORDER**

This case arises out Defendants' alleged efforts to gain a competitive advantage over Plaintiffs. Both Plaintiffs and Defendants are engaged in the currency exchange business, and both specifically sell Iraqi Dinar to interested customers. Plaintiff Dinar Corp. Inc. ("Dinar Corp." or "DCI") and its owner Plaintiff Husam Tayeh allege that Defendants have disparaged DCI's business with false and misleading faux online reviews, sent tortious letters to Plaintiffs' banks encouraging them to terminate their business relationship with Plaintiffs, and employed a variety of unlawful means, including unfairly manipulating internet search results, in order to bring economic harm to Plaintiffs.

Rather than actively litigating this case, however, both parties have taken an unpleasant detour, landing in a discovery dispute morass. (*See* Apr. 17, 2015 Ord., Doc. 180.) The Court will address some of the parties' discovery disputes in an upcoming hearing. Here, the Court solely addresses one of the odder permutations of the parties' conduct: Plaintiffs' motion urging the Court to disqualify Defendants' counsel [Doc. 164]. Several "ethical concerns" have prompted Plaintiffs' filing of this motion including Plaintiffs' accusation that Defendants' counsel is actively participating in Defendants' alleged unfair business practices. While some of Defendants' counsel's apparent conduct may be troubling, for the reasons that follow, Plaintiffs' Motion is **DENIED**.

## I.   LEGAL STANDARD

The Court should only grant a motion to disqualify an attorney where "compelling reasons" exist, because disqualification both overrides the client's presumptive right to choose his own lawyer and may also impose hardships on the litigant. *In re BellSouth Corp.*, 334 F.3d 941, 961 (11th Cir. 2003); *Hermann v. GutterGuard, Inc.*, 199 F. App'x 745, 752 (11th Cir. 2006); *Bernocchi v. Forucci*, 614 S.E.2d 775, 778 (Ga. 2005). Indeed, not only would disqualification cause delay, but it may also result in significant extra costs and inconvenience associated with finding new counsel and getting counsel up to speed. *Bernocchi*, 614 S.E.2d at 778 (Ga. 2005). For this reason, "disqualification of chosen counsel should be seen as an extraordinary remedy and should be granted sparingly." *Id.*; *accord Nortan v. Tallahassee Memorial Hosp.*, 689 F.2d 938, 941 n.4 (11th

Cir. 1982) ("Disqualification is a harsh sanction, often working substantial hardship on the client, especially in cases such as this one where extensive discovery and trial preparation have been completed."); *Reece v. United Home Care of N. Atlanta, Inc.*, No 1:12–CV–2070–RWS, 2014 WL 1775499, at *2 (N.D. Ga. May 2, 2014) ("As a general rule, motions to disqualify counsel are viewed disfavorably.").

Two sources of authority govern motions to disqualify counsel, depending on the alleged misconduct. First, where a lawyer's conduct "threatens disruption of court proceedings . . . or is a deliberate challenge to the authority of the district court," *In re BellSouth*, 334 F.3d 941, 959 (11th Cir. 2003), the Court may invoke its inherent "control over his or her court room and process" to disqualify an attorney. *Schlumberger Techs., Inc. v. Wiley*, 113 F.3d 1553, 1558 (11th Cir. 1997); *see also Hermann*, 199 F. App'x at 752 ("[F]ederal common law also governs attorneys' professional conduct because motions to disqualify are substantive motions affecting the rights of the parties.").

Plaintiffs assert, without much explanation and no evidence, that Defendants' counsel's conduct "certainly attacks the orderly administration of justice." (Mot. Disqualify at 13.) Here, however, none of the alleged misconduct amounts to a clear disregard for the court's authority. And while practically speaking, this case has had its fair share of disruptions based on both sides' discovery antics, Defendants' counsel's conduct has not threatened court

proceedings. The Court finds no reason to invoke its inherent authority to remove Defendants' counsel from this case.

Second, lawyers in this Court must follow the Court's Local Rules, which incorporate the Georgia Rules of Professional Conduct (the "Georgia Rules") and judicial decisions interpreting those rules. *See* LR 81C, NDGa; *Bayshore Ford Truck Sales, Inc. v. Ford Motor Co.*, 380 F.3d 1331, 1338-39 (11th Cir. 2004); *Hermann v. GutterGuard, Inc.*, 199 F. App'x 745, 752 (11th Cir. 2006). Violation of these rules of professional conduct may warrant disqualification. *Hermann*, 199 F. App'x at 752. To determine whether disqualification is appropriate based on rule violation, the court applies an exacting standard. *Thomas v. Tenneco Packaging Co., Inc.*, 293 F.3d 1306 n.24 (11th Cir. 2002). The Court "must clearly identify a specific Rule of Professional Conduct which is applicable to the relevant jurisdiction and must conclude that the attorney violated that rule." *Id.* (quoting *Schlumberger Techs., Inc. v. Wiley*, 113 F.3d 1553, 1561 (11th Cir. 1997)). The Court next considers whether Plaintiffs have presented evidence of a violation of the Georgia Rules which justify disqualification of Defendants' counsel.

**II. DISCUSSION**

Plaintiffs identify four categories of conduct and argue that this conduct violated a number of Georgia Rules, thus warranting disqualification of Lilenfeld, P.C. and David Lilenfeld.[1]

### A. Whether Lilenfeld is a Necessary Witness

According to Plaintiffs, David Lilenfeld is a necessary witness and is thus disqualified from representing Defendants under Rule 3.7. Rule 3.7(a) provides that "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness" except in three circumstances. Georgia Rule 3.7(a). These circumstances are where:

> (1) the testimony relates to an uncontested issue;
>
> (2) the testimony relates to the nature and value of legal services rendered in the case; or
>
> (3) disqualification of the lawyer would work substantial hardship on the client.

Georgia Rule 3.7(a). "The purpose of Rule 3.7 is to prevent an attorney from being in the awkward position of acting as both a witness and an advocate *at trial* . . . ." *Clough v. Richelo*, 616 S.E.2d 888, 895 (Ga. Ct. App. 2005) (emphasis added) (articulating the many ways a jury could be confused if the lawyer for a party is also a material witness in a case). Thus, "Rule 3.7 does not preclude a

---

[1] Defendants urge the Court to deny Plaintiffs' Motion to Disqualify as untimely, without reaching the merits. The Court acknowledges that Plaintiffs' Motion to Disqualify as to some of the issues presented could have been brought earlier, and the Court is empowered to deny Plaintiffs' Motion to the extent the Court finds the Motion untimely. The Court declines to do so here, and instead considers the merits of Plaintiffs' Motion.

lawyer from representing a client prior to trial, even if the lawyer is likely to be a necessary witness at the trial." *Id.*

The Court may nonetheless disqualify a lawyer before trial if it is clear that the client would not suffer hardship and it is in the client's best interest for his counsel to be replaced. *See Stewart v. Bank of America, N.A.*, 203 F.R.D. 585, 587-88 (M.D. Ga. 2001) (granting a motion to disqualify the plaintiff's counsel where it was obvious that it was in the plaintiff's best interest for his counsel to be removed and where the plaintiff would suffer no hardship because no discovery had taken place, no dispositive motions had been filed, and a trial date had not been set). "The party moving for disqualification of a lawyer under Rule 3.7 has the burden of showing that the lawyer 'is likely to be a necessary witness' by demonstrating that the lawyer's testimony is relevant to disputed, material questions of fact and that there is no other evidence available to prove those facts." *Clough*, 616 S.E.2d at 891-92. In some cases, an evidentiary hearing is required to determine whether disqualification is appropriate. *See, e.g., id.*

Plaintiffs cobble together a series of allegations, some unfounded and others mostly unsupported, to argue that David Lilenfeld is a necessary fact witness. For example, Plaintiffs suggest that Lilenfeld may have been involved in the alleged unfair business practices and defamation directed towards Dinar Corp. To support this assertion, Plaintiffs note that Lilenfeld and Defendant Sterling Currency Group, LLC have used the same marketing company, and that this company posted the defamatory content about Plaintiffs online. (Mot.

6

Disqualify at 14, Doc. 164.)  And Plaintiffs provide evidence that they say supports the conclusion that Lilenfeld and his law firm Lilenfeld, P.C. have engaged in unfair search engine optimization ("SEO") in the same way that Defendants have.

This evidence does not sufficiently support Plaintiffs' suggestion that Lilenfeld was involved in any of the unfair business practices alleged in this case. Lilenfeld admits to having used the same marketing firm as Sterling Currency Group "for a few weeks in 2012," but maintains in his sworn affidavit that "[t]hose services are not related to any of the allegations of wrongdoing by Defendants in this Action." (Resp. Ex. 3 ("Lilenfeld Decl.") ¶ 12, Doc. 173-3.) And although Lilenfeld admits that the marketing firm provided "SEO for Lilenfeld P.C.," he swears, under penalty of perjury, that he has not "participated in any negative SEO against either Plaintiff." (*Id.* ¶¶ 11-12.) Finally, Lilenfeld attests that he has not had "any direct involvement with the alleged misconduct of Defendants." (Resp. Ex. 3 ("Lilenfeld Decl.") ¶¶ 10-11, Doc. 173-3.) Even indirect involvement with the alleged misconduct in this case could make Lilenfeld a possible fact witness, but the Court has no way to determine, based on the evidence Plaintiffs have presented, whether Lilenfeld participated in any way in the alleged wrongdoing such that he would be a necessary fact witness justifying his disqualification.

Plaintiffs also believe that Lilenfeld is "entangled" in Defendants' Dinar exchange business, such that Lilenfeld will likely have discoverable information

as a fact witness and may be called as a witness at trial.  Plaintiffs claim that Lilenfeld served as general counsel to SCG.  Although Lilenfeld attests that he is not now in-house counsel for SCG, (Lilenfeld Decl. ¶ 5), Plaintiffs have identified some evidence that perhaps Lilenfeld has at one time served as SCG's in-house counsel.  (*See* Atkinson Decl. Ex. 1, Doc. 164-4.)[2]  But even if Lilenfeld had at one point served as SCG's in-house counsel, that reason alone is insufficient to infer that Lilenfeld is a necessary fact witness regarding the facts in this case.[3]

Plaintiffs then point to Lilenfeld's business partnership with two Defendants.  Lilenfeld admits that he is a partner with Sterling Currency Group's owners (Ty Rhame and Jim Shaw) in an entity known as SterlingFunder, LLC. But Lilenfeld maintains that this is a "separate, unrelated entity."  (Resp. Ex. 3 ("Lilenfeld Decl.") ¶ 9.)  According to Lilenfeld, SterlingFunder is a "crowd sourcing entity and has no involvement in foreign currency exchange."  (*Id.* ¶ 9.)[4] Perhaps Lilenfeld misrepresents SterlingFunder's connection with SCG in his

---

[2] The email from Ty Rhame to Daniel Atkinson identifies David Lilenfeld as Defendants' attorney and notes that Defendants "are using our in-house counsel and the costs are inconsequential to us." (Atikinson Decl. Ex. 1.)  It is reasonable to infer from this that Rhame believes Lilenfeld is SCG's in-house counsel.

[3] Plaintiffs also speculate that if Lilenfeld were to testify, his testimony might contradict testimony of any Defendants and show that Lilenfeld has an "actual conflict of interest that would preclude him from even representing Defendants."  (Mot. Disqualify at 17, Doc. 164.) Pure speculation is no basis to disqualify an attorney.

[4] *See also* Sterling Funder, www.sterlingfunder.com (last visited Apr. 16, 2015) ("SterlingFunder is an Atlanta-based equity and debt crowdfunding portal with an innovative approach to connecting startup companies seeking capital with qualified investors.").

8

affidavit, and perhaps other evidence will surface to prove this. But Plaintiffs have offered no such evidence here.[5]

Nonetheless, the Court advises Mr. Lilenfeld that, even if he is not subject to disqualification due to his business relationship with some of the Defendants, he must maintain vigilance and, consistent with Georgia Rule 2.1, "exercise independent professional judgment and render candid advice" to the Defendants here and should "not be deterred from giving candid advice that will be unpalatable to the client." Georgia Rule 2.1.

If during the course discovery, Plaintiffs uncover evidence establishing the likelihood that Lilenfeld will be a necessary witness at trial, Plaintiffs are free to file a renewed motion to disqualify.[6] The Court cautions, however, that as noted above, even if counsel is unable to represent Defendants at trial, the Court may allow counsel to represent Defendants in all pre-trial matters, which do not raise any concerns regarding juror confusion.

### B.   The "Spoofed" Call

Relying on Georgia Rules 3.4(g), 4.1, 4.4 and 8.4(a), Plaintiffs next argue that a "spoofed" telephone call, during which Robin Gentry, an attorney at Lilenfeld, P.C., called Plaintiffs' counsel pretending to be a prospective client, is a

---

[5] Plaintiffs hypothesize in their Third Amended Complaint that Sterling Currency Group uses SterlingFunder LLC to "knowingly and willfully commit[] bank fraud on a daily basis by intentionally depositing checks on behalf of . . . SterlingFunder, LLC when Defendants are aware that these checks were not intended to be payable to . . . SterlingFunder, LLC." (3d Am. Compl. ¶ 82.) Plaintiffs, however, offer no evidence of this nefarious connection between the two companies.

[6] Defendants have apparently agreed to make Lilenfeld available for deposition to answer questions regarding his involvement in any of the alleged wrongdoing in this case. (Defs.' Resp. Ex. 2 at 1, Doc. 173-2.)

basis for disqualification. The fake telephone call was indeed unprofessional and inappropriate but does not justify disqualifying Defendants' counsel.

First, based on the evidence presented, the crank call did not violate Georgia Rule 3.4(g). Georgia Rule 3.4(g) prohibits counsel from "us[ing] methods of obtaining evidence that violate the legal rights of the opposing party or counsel." Plaintiffs presume that Ms. Gentry's telephone call "was done purely to ascertain Plaintiffs' Internet defamation strategy." (Mot. Disqualify at 18.) It is unclear how this telephone call could have achieved such a goal, and in any case, there is no evidence to suggest that Ms. Gentry was attempting to obtain any evidence at all. Frankly, the Court is perplexed why Ms. Gentry took the bizarre and unprofessional actions she did. But the Court has no evidence to conclude this telephone call violated Rule 3.4(g).

Likewise, the call did not clearly violate Georgia Rule 4.1, and even if it did, disqualification is not warranted. Georgia Rule 4.1(a) prohibits counsel from "mak[ing] a false statement of material fact or law to a third person." Ms. Gentry does not deny that she falsely stated she was "Shannon" and that she portrayed herself as a potential client. The Court, however, is uncertain that these false representations were at all material. On one hand, nothing about the telephone call seems material. On the other hand, Plaintiffs' counsel likely (and reasonably) communicates with opposing counsel in much different ways that they would with a potential client. Ms. Gentry's efforts to gain any information from Plaintiffs' counsel by donning a fake name and lying about her intentions is

10

troubling. But the Court does not find that her misconduct is sufficient to disqualify her or her entire firm from representing Defendants. And Plaintiffs offer no authority to support the notion that disqualification is an appropriate consequence for the kind of potential Rule 4.1 violation here.

Nor does the telephone call clearly violate Rule 4.4. Georgia Rule 4.4 prohibits the use of "means that have no substantial purpose other than to embarrass, delay or burden a third person, or use methods of obtaining evidence that violate the legal rights of such person." The purpose of Ms. Gentry's telephone call was apparently to determine whether Mr. Warner was in fact on leave as he reported to the Court he was. (Defs.' Resp. Ex. 6 ("Gentry Decl.") ¶ 6, 8-9.) Lying is no way to obtain this information, but it does not appear that Ms. Gentry's telephone call was intended to "embarrass, delay or burden" anyone. If anything, this telephone call has only embarrassed Ms. Gentry. And as previously mentioned, there is no indication that Ms. Gentry was attempting to obtain "evidence" by making the fake telephone call.

Finally, although it does appear that Ms. Gentry's false statements may have violated Georgia Rule 8.4(a)(4), which prohibits "professional conduct involving dishonesty, fraud, deceit, or misrepresentation," Plaintiffs offer no authority to support the drastic measure of disqualification.[7] Nonetheless, the

---

[7] Although Defendants represents in their Response Brief that Mr. Lilenfeld "had no knowledge that the call was being placed," (Defs.' Resp. n.15), Lilenfeld does not address this in his affidavit. There is no evidence for the Court to determine whether others in the Lilenfeld firm were involved in Ms. Gentry's phone call or otherwise condoned it. However, given the Court's conclusion that this event, by itself, does not warrant disqualification of the Lilenfeld firm, the

11

Court **ORDERS** counsel for all parties not to engage in any disguised communications between each other similar to Ms. Gentry's telephone call here. In other words, whenever counsel is communicating with each other, they **SHALL** not falsely identify themselves. A violation of this Order will result in serious sanctions.[8]

### C. Whether Lilenfeld Tacitly Assisted His Client in Committing a Crime

Plaintiffs' argument that Lilenfeld himself "tacitly assisted his client in furtherance of a crime" is entirely unsupported by the evidence. Plaintiffs rely on Defendant Rhame's telephone call and odd email directed towards Daniel Atkinson, a representative of PeoplesTalkRadio, Inc. ("PTR"). Atkinson hosts a radio show, and according to Plaintiffs, PTR is Dinar Corp.'s "current advertising partner." (Mot. Diqualify at 6.) Atkinson attests that he received a disgruntled call from Rhame, complaining about a recorded call from a listener who expressed concern regarding the safety of purchasing currency from SCG. (Atkinson Decl. ¶¶ 8-9, Doc. 164-4.) Rhame asked Atkinson to remove the recording of the call from the Internet. (*Id.* ¶ 9.) He also "suggested that [Atkinson] cease advertising for DCI and led [Atkinson] to believe that SCG would make it hard for [PTR] if [they] did not do so." (*Id.*) Rhame also "went on a rant about how [Husam Tayeh] is a criminal." (*Id.* ¶ 10.)

---

Court at this time need not inquire further, though it is hard to believe that one attorney proceeded in this way without talking to others in a small firm.

[8] The Court is surprised that such an order is required to control obvious unprofessional behavior.

12

The next day, Atkinson received an email from Rhame. (Doc. 164-4 at 6-7.) In this email, Rhame forwarded a note from David Lilenfeld which attached eight Court Orders from this case. (Doc. 164-4 at 7.) Rhame asserted that the Defendants "love this lawsuit" because it is "allowing us to gather information that will go directly to the appropriate authorities if/when we find violations of statutes, regulations, and laws." (*Id.* at 6.) Rhame indicated that the Defendants have no intention to ask Plaintiffs to drop or settle the lawsuit, and will continue to litigate this case vigorously.

Plaintiffs argue that Rhame's communication violated this Court's "unambiguous order directing Defendants 'not to communicate any information or questions that state or suggest Plaintiffs are engaged in any unlawful activities o[r] business practices.'" (Mot. Disqualify at 7 (citing Mar. 9, 2015 Ord., Doc. 142).) The directive Plaintiffs refer to specifically regards Defendants' effort to manipulatively "poll their own customers for information," and was not a blanket order directing Defendants not to communicate to anyone that Plaintiffs are engaged in any unlawful activities or business practices. (*See* Mar. 9, 2015 Ord. ¶ 4.) To be clear, communications that falsely represent that Plaintiffs are engaged in unlawful activities may violate Georgia law. But this Court has not entered a preliminary injunction in this matter.[9]

---

[9] Plaintiffs elsewhere have characterized paragraph 4 of the Courts' March 9, 2015 Order as a "standing discovery order to refrain from defaming Plaintiffs during discovery." (*Id.* at 19.) Perhaps an Order such as this — essentially a preliminary injunction — might be necessary in the future. But the Court has thus far issued no preliminary injunction in this case.

Plaintiffs also suggest that Rhame's conduct violated O.C.G.A. § 16-10-93(a), which makes it a crime to harass witnesses in an effort to prevent them from testifying in court.

> A person who, with intent to deter a witness from testifying freely, fully, and truthfully to any matter pending in any court, in any administrative proceeding, or before a grand jury, communicates, directly or indirectly, to such witness any threat of injury or damage to the person, property, or employment of the witness or to the person, property, or employment of any relative or associate of the witness or who offers or delivers any benefit, reward, or consideration to such witness or to a relative or associate of the witness shall, upon conviction thereof, be punished by imprisonment for not less than one nor more than five years.

O.C.G.A. § 16-10-93(a).  Rhame's telephone call and email, alone, do not support a conclusion that Rhame attempted to prevent Atkinson from testifying in this matter.  Rhame asked Atkinson to "cease advertising for DCI" and to "start advertising for SCG again."  But as detailed by Atkinson, Rhame intimated nothing about Atkinson's testimony in court.

In any case, Plaintiffs offer no evidence that Lilenfeld or his lawfirm condoned Rhame's communication such that Lilenfeld should be disqualified from representing Defendants in this lawsuit.  On the other hand, Defendant Rhame's conduct at issue here does approach a line that should not be crossed.  Defense counsel are reminded that they have an ethical and legal duty not simply to stick their heads in the sand and say "we know nothing" about client misbehavior.

### D. Whether Lilenfeld Altered Evidence in Violation of Georgia Rules 3.3 and 3.4 or Otherwise Inappropriately Withheld Evidence

Plaintiffs assert that Defendants "visibly altered" documents before producing them in violation of Georgia Rules of Professional Conduct.[10] Defendants counter that, except for lawfully redacting attorney-client privileged material, they have not altered any documents. Defendants also assert that any redaction is "easily identifiable as such" by "a large black redaction strip." (Defs.' Resp. at 9.) Plaintiffs offer no evidence of improper alteration of evidence.[11] Any document retention or production issue will be addressed within the context of a properly presented discovery dispute. The Court will not entertain a disqualification motion based on unsupported assertions of document production impropriety.

Likewise, Plaintiffs concern about Defendants' failure to produce documents in response to discovery requests should be raised as a discovery dispute, pursuant to the Court's Guidelines or other orders. The Court finds no reason to disqualify Lilenfeld or his law firm based on any of the document production issues raised in Plaintiffs' Motion.

---

[10] Plaintiffs invoke Rule 3.3, which generally prohibits knowingly offering false evidence, and Rule 3.4, which prohibits obstruction.

[11] Plaintiffs note that SCG's opposing side in a case in the Western District of Michigan expressed similar concerns that SCG was unlawfully altering evidence. (Mot. Disqualify Ex. 7(D), Doc. 166-1.) The district court in that case dismissed these concerns as "stridently" asserted but "unsupported by any evidence." *Sterling Currency Grp., LLC v. Maurer, et al.*, No. 1:13-cv-0878-RHB (W.D. Mich. Nov. 26, 2013).

### III.  CONCLUSION

Defense counsel's (and Defendants') conduct has not been blameless here. However, for the reasons explained above, this conduct does not justify disqualification, and thus Plaintiffs' Motion to Disqualify [Doc. 164] is **DENIED** at this time.  Nonetheless, even though the type of conduct discussed here does not warrant disqualification, a repeat of the unprofessional conduct will inevitably raise the litigation heat, ethical concerns, and understandable suspicion on the part of Plaintiffs and their counsel.  The Court expects counsel to exercise complete professionalism consistent with the Georgia Rules of Professional Conduct.  As noted above, Plaintiffs are not foreclosed from filing a renewed motion to disqualify Defendants' counsel but they must produce actual, specific evidence that conforms with the high standard for disqualification discussed in this Order.

**IT IS SO ORDERED** this 21st day of April, 2015.

_____
**Amy Totenberg**
**United States District Judge**