```
                  UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF GEORGIA
                       ATLANTA DIVISION


DINAR CORP, INC.,              )
HUSAM TAYEH,                   )
                               )
       PLAINTIFFS,             )
                               ) DOCKET NO. 1:14-CV-0714-AT
       -VS-                    )
                               )
STERLING CURRENCY GROUP,       )
LLC, ET AL.,                   )
                               )
       DEFENDANTS.             )



         TRANSCRIPT OF TELEPHONE CONFERENCE PROCEEDINGS
               BEFORE THE HONORABLE AMY TOTENBERG
               UNITED STATES DISTRICT COURT JUDGE
                    TUESDAY, JUNE 23, 2015




APPEARANCES:

ON BEHALF OF THE PLAINTIFFS:

     DANIEL R. WARNER, ESQ.

ON BEHALF OF THE DEFENDANTS:

     DAVID M. LILENFELD, ESQ.

ON BEHALF OF THE DEFENDANT BELL:

     AARON M. DANZIG, ESQ.



ELISE SMITH EVANS, RMR, CRR
OFFICIAL COURT REPORTER
UNITED STATES DISTRICT COURT
ATLANTA, GEORGIA
```

1          (Tuesday, June 23, 2015; Atlanta, Georgia.)

2          THE COURTROOM DEPUTY CLERK:  Mr. Warner, can you please

3   announce who is with you on the phone?

4          MR. WARNER:  Yes.  Can you hear me?

5          THE COURT:  Yes.

6          MR. WARNER:  Okay.  This is Dan Warner on behalf of the

7   Plaintiff, and we are now on speaker phone.

8          MR. LILENFELD:  Good afternoon, Your Honor.  David

9   Lilenfeld here for the Defendant.

10          MR. DANZIG:  Good afternoon, Your Honor.  Aaron Danzig

11   on behalf of Mr. Bell, one of the defendants, who is the deponent

12   in this matter.

13          THE COURT:  Okay.  This is Judge Totenberg.  And I

14   understand that the Plaintiff is objecting to the Defendant

15   taking the Fifth in these depositions.  Is that what the concern

16   is?

17          MR. WARNER:  I'm sorry, Your Honor.  It appears you are

18   cutting out a little bit.

19          THE COURT:  All right.  So my understanding is that the

20   concern that the Plaintiff is raising is that the Defendant is

21   taking -- or the witness is taking the Fifth in response to a

22   variety of questions in the deposition.  Is that what's

23   happening?

24          MR. WARNER:  That is correct, Your Honor.  Mr. Bell --

25          THE COURT:  Say who's speaking.

1    MR. WARNER:  This is Dan Warner.

2    THE COURT:  Okay.

3    MR. WARNER:  And Mr. Bell is being deposed.  And he

4  is -- he's pleading the Fifth to basic foundational questions, as

5  well as to questions that have already been posed and to which

6  he's already answered in pleadings and affidavits and everything

7  else.

8    THE COURT:  Well, what do you mean by a basic

9  foundational question?

10   MR. WARNER:  For instance, I just asked Mr. Bell a

11 question if he knew who Dinar Corp's process server was and he

12 pled the Fifth.  I also asked him what he did, what position,

13 what title he holds at Sterling Currency Group, and he pled the

14 Fifth.

15   THE COURT:  What was the first question you asked him?

16   MR. WARNER:  Whether he was familiar with Dinar Corp's

17 payment processor, which we all know is My Monex, and he pled the

18 Fifth to that question.

19   THE COURT:  Well, I reviewed the minutes that Mr.

20 Dokson prepared on the 17th of June of the -- basically, of the

21 meeting with you and his report to -- on the status conference.

22 And I anticipated from that that the Defendant or a witness might

23 well take the Fifth Amendment and assert it as an objection or --

24 in response to the questions.  And I understood, also, that you

25 still wanted to proceed with discovery and did not want to stay

1   discovery.  But, you know, since you decided to proceed with the

2   depositions, which was -- I understood that that was going to

3   happen, and Mr. Dokson gave me a call before he left town about

4   this status report and what was going on, that it really -- that

5   you were taking on the -- the potential risk that the witness

6   might assert the Fifth Amendment as an objection or privilege.

7           So, while -- you know, undoubtedly there probably are

8   items that the witness can -- could possibly state here without

9   in any way infringing on his Fifth Amendment rights, I don't know

10  that we could possibly handle that except on a

11  question-by-question basis.  And I'm certainly not willing to do

12  that.  I mean, obviously he has to say his name.  I don't know

13  that there's anything confidential about his -- his address.  I

14  mean, there may be other things as well.  And it may be that his

15  knowledge of anything relating to Dinar isn't -- doesn't in any

16  way touch the proceedings that there's a concern about, but I

17  don't -- I don't know enough about the other proceedings.  I do

18  know something about them.  But it's hard for me to judge without

19  being inside the other proceedings to know the scope of what the

20  other possible -- I know what the civil forfeiture case alleges

21  and I don't know what other -- whether there are concerns about a

22  criminal investigation associated with it.  So, that's the

23  problem.

24          And, you know, I'm not sure what you thought you were

25  going to be able to get.  I thought when I read this that what

1  you were planning to do was simply to ask a good number of

2  questions, and probably a substantial majority of them I expected

3  the witness might assert the Fifth Amendment privilege on, but

4  you would have preserved your record.  And whether that privilege

5  can really be asserted is another matter later on.  But I

6  don't -- or whether he'll have waived his right to affirmatively

7  add information because he's asserted the Fifth Amendment is --

8  moreover, is -- you know, I could understand tactically why you

9  might be interested in doing that, but I didn't see you securing

10 a lot of information, frankly, in the -- this context.  So, I'm

11 kind of -- that's what my view was.  And I don't know what else

12 you were trying to accomplish that you thought was clearly

13 outside the territories that the witness might claim as a Fifth

14 Amendment privilege.

15          MR. WARNER:  Okay.  Well, thank you, Your Honor.  I

16 guess I heard what I needed to hear.  I was just concerned.  And,

17 you know, I think we needed to hear from you on this issue

18 because, you know, my understanding of the case law is that a

19 blanket assertion of the Fifth Amendment is not prohibited.  And

20 if someone does abuse it in that manner, as you indicated, later

21 down the road they will be precluded from changing their story

22 and they're essentially waiving their right to -- on the issues

23 that are being addressed.  So --

24          THE COURT:  Well, I mean, depending on the context,

25 that may be true.  And, so, obviously the -- I'm sure the witness

1   and his counsel are going to be careful about that.  But you

2   still may go through this exercise that they would rather err on

3   the side of asserting the privilege because of whatever concerns

4   there might be about the criminal proceedings.  And, obviously,

5   those might trump -- the concerns about those proceedings might

6   trump anything that they're concerned about in the proceeding

7   with you.

8          MR. WARNER:  Understood, Your Honor.  I guess where my

9   trouble is is that they have essentially already admitted to a

10  number of these allegations, to making all of these postings, to

11  sending letters to banks, to the Better Business Bureau, to

12  governmental agencies.  And now when I ask these same questions,

13  you know, Mr. -- Mr. Bell pleads the Fifth.  And I don't want to

14  get into a situation where, you know, we bring a motion to compel

15  or a motion to strike the answer and affirmative defenses, and,

16  you know, we have an issue doing that.

17         You know, it's my understanding if you -- if you answer

18  the question previously, you waive the right to plead the Fifth.

19  And, you know, I don't want the Defendant to basically say that

20  we -- you know, they get a redo of the case because they did a

21  blanket assertion of the Fifth Amendment privilege to willfully

22  fall under that marital exception, which is that a motion -- if a

23  motion for summary judgment could be granted based on the

24  invocation, that you would -- it would essentially fall into that

25  narrow exception and --

ELISE SMITH EVANS, RMR, CRR

1           THE COURT:  Well, I don't think that I can promise
2  what's going to happen in the future.  The principles you
3  articulate are certainly as a whole correct, but there are
4  obviously all sorts of wrinkles in Fifth Amendment law and in the
5  facts of any particular case.  And I can't really tell you for
6  sure what's going to happen here, but you -- I don't know that
7  you're not entitled to rely on what you have, but obviously
8  that's something that you're going to have to judge.  I don't
9  think that you -- whether -- whether or not the Special Master
10 was here and who is now sort of handling this in the more
11 intimate way, I don't think it would make any difference.  I
12 mean, no one can assure you precisely.  But you're capable of
13 looking at the law and making a decision.  But there are
14 obviously waiver issues that have to be a concern to anyone who's
15 involved in this, let me just simply say, as there are whenever
16 you assert a privilege, such as an attorney/client privilege, and
17 then you later on want to selectively use it.  But that's, you
18 know, for you all strategically to decide.
19           But I'm not in a position at this point, all I'm
20 saying, to sort of -- is to sit and selectively assess each
21 assertion of the privilege.  That wouldn't be right.  That's
22 really some -- that's a balancing act that the witness' counsel
23 is going to have to work out with his client.
24           MR. DANZIG:  Your Honor, Aaron Danzig, Arnall Golden
25 Gregory, on behalf of Mr. Bell, who's the witness and one of the

1  defendants in the case.

2          And we have been -- Mr. Bell has been invoking his

3  Fifth Amendment right --

4          THE COURT:  Can you, again, speak a little closer to

5  the phone?  Thank you.

6          MR. DANZIG:  Yeah.  Mr. Bell has been invoking his

7  right as -- that we believe appropriate.  We understand that it's

8  a question-by-question basis.  He certainly has answered what his

9  name was.  But understanding the Court, the difficulty of trying

10 to answer question-by-question, whether it's appropriate or not,

11 we did have discussions with counsel for the Plaintiff at the

12 beginning of the day when we discussed our respective views of

13 whether the Fifth Amendment would apply and how it would apply.

14 And my suggestion was that if he wanted to proceed, we would go

15 through and Mr. Bell would answer or invoke as the -- we believed

16 appropriate and, thereby, a record would be made.  And if it

17 turns out that the Court has determined that the waiver was -- I

18 mean, that the invocation was not appropriate or that there was

19 some prior waiver, then we'd have to address it at that time.

20         To give the Court a little flavor, Mr. Bell is a

21 defendant in this case.  And after substantial discovery and

22 the -- back and forth in this civil case, the Government executed

23 search warrants at Mr. Bell's house and other individuals' houses

24 and at the Sterling Currency Group locations and then filed a

25 civil forfeiture action that the Court indicated that it was

1  aware, so understands that there are certainly very significant

2  potential criminal ramifications and issues that arose after the

3  Plaintiffs' civil case was filed.

4          Mr. Bell is trying to make sure that his rights are

5  protected, understanding that there may be adverse consequences

6  in civil litigation as a result of his invocation, but that's the

7  decision that Mr. Bell has been making.  And we plan on

8  proceeding over the course of the rest of the deposition trying

9  our best to invoke in those instances what we believe is

10  appropriate to get a fulsome record for the Court.  And if

11  Plaintiffs' counsel seeks to proceed on a motion to compel, I

12  think the Court would then have the full transcript or

13  information in which to make its determination.

14          Thank you, Your Honor.

15          THE COURT:  All right.  Well, it sounds like you --

16  everyone's relatively on the same page, even if it's not the page

17  probably that anyone wanted to be on.  Is there something else

18  for me to address or are we -- have we basically dealt with

19  everything that's on the -- on your plate right now?

20          MR. WARNER:  No, Your Honor.  I think we covered

21  everything.  I think everyone has an understanding of how we need

22  to proceed.  And I, you know, thank you for making yourself

23  available on such short notice.  I very much appreciate it.

24          THE COURT:  All right.  Very good.  Good luck to

25  everyone there.

1           MR. WARNER:  Thank you.

2           MR. LILENFELD:  Thank you, Your Honor.

3           MR. DANZIG:  Thank you, Your Honor.

4           THE COURT:  Bye-bye.

5           (End of proceedings.)

6                               *****

7   UNITED STATES DISTRICT COURT

8   NORTHERN DISTRICT OF GEORGIA

9   CERTIFICATE OF REPORTER

10

11

12          I do hereby certify that the foregoing pages are a true

13  and correct transcript of the proceedings taken down by me in the

14  case aforesaid.

15          This the 20th day of July, 2015.

16

17

18
                               _____
19                             ELISE SMITH EVANS, RMR, CRR
                               OFFICIAL COURT REPORTER
20

21

22

23

24

25

ELISE SMITH EVANS, RMR, CRR